FILED

April 11, 2018

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:50 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| JULIE DEMOTTE, | ) | |
| Employee, | ) | Docket No. 2017-06-1778 |
| v. | ) | |
| UPS, | ) | |
| Employer, | ) | State File No. 89793-2016 |
| | ) | |
| and | ) | |
| LIBERTY INSURANCE CO., | ) | Judge Joshua Davis Baker |
| Carrier. | ) | |

## COMPENSATION HEARING ORDER AWARDING FUTURE MEDICAL BENEFITS AND DENYING TEMPORARY AND PERMANENT DISABILITY BENEFITS

The parties appeared for a compensation hearing on March 14, 2018, to determine Ms. Demotte's entitlement to permanent disability, temporary disability, and future medical benefits for her workplace injury. The Court holds UPS must provide Ms. Demotte with lifetime medical benefits for her workplace injury but denies her claim for temporary and permanent disability benefits.

## History of Claim

With the exception of Ms. Demotte's impairment rating, the parties stipulated to almost all the material facts in this case. On November 11, 2016, Ms. Demotte fell and broke her hip and leg while retrieving packages from a clogged package-transport conveyor at a UPS-distribution facility.[1] UPS accepted the claim, and Ms. Demotte chose Dr. Jason Evans as the authorized treating physician. She also, however, received treatment from Dr. Philip Kregor, Dr. Evans' partner.

---

[1] Only Ms. Demotte testified at trial, and the Court summarized this history from the stipulations and her testimony.

1

On March 9, 2017, Ms. Demotte saw Dr. Evans and requested he release her to return to work. However, for reasons unclear, Dr. Kregor, instead of Dr. Evans, signed her release.

Before her release, UPS paid Ms. Demotte temporary disability benefits at two different rates. For the first twelve weeks, UPS paid Ms. Demotte at a rate of $186.67 per week. Because of an overpayment, UPS lowered the rate to $134.18 per week on February 8 and continued payments at that rate until her release.[2]

Ms. Demotte worked for a few days and then left UPS on March 21. She testified she left because she could not physically perform the job. On April 10, Dr. Evans placed Ms. Demotte at maximum medical improvement (MMI). He issued a form C-30A Final Medical Report assigning Ms. Demotte a three-percent whole-person impairment rating and releasing her to return to work at full duty.

UPS stipulated to Ms. Demotte's entitlement to future medical benefits but objected to admission of the form C-30A to establish Ms. Demotte's permanent impairment rating. UPS argued that the medical report was inadmissible to prove impairment because Ms. Demotte failed to give proper notice of her intent to use it, which deprived UPS of the opportunity to depose Dr. Evans. Ms. Demotte opposed the objection, arguing that UPS presented no medical proof rebutting Dr. Evans' opinion. She further argued that the Court should admit the form C-30A as a medical record, and that requiring her to submit a form C-32 contravenes a central goal of the reform by fomenting unnecessary litigation. The Court admitted the form but sustained UPS' objection concerning its use to prove Ms. Demotte's permanent impairment rating.

After the trial, the Court reviewed the scheduling order and noticed it contained no deadlines regarding expert witnesses. The Court then reviewed the recording from the hearing to determine why the order omitted these deadlines. At the scheduling hearing, the following exchange occurred between the Court and defense counsel, David Hooper:

Court: It almost seems to me like ADR might be a good thing for you all?

Hooper: Well, I don't have any, um, unrealistic expectation about that. Based on things up to this point, I doubt that that's helpful in this case. I'll go through it if the Court wishes it because I realize that it's, at least on, under the rules, it's mandatory but I don't know that there's a reasonable expectation this will work. Honestly, the issues here, however they've been, and I think they've been skewed a bit by Zach [Wiley], but I think the issue here is what she's entitled to receive in terms of permanency.

---

[2] The parties stipulated to a compensation rate of $141.96 per week.

Court:  So there is a dispute over that?  There's a three-percent and a one—is there an agreement on the rating?

Hooper:  There is.

Court:  Okay, okay, so then the issue is whether there's additional benefits that she's entitled to?

Hooper:  Right, well there's a, well it actually is skewed a bit because of the, of um, of the overpayment of temporary disability benefits.

Court:  Okay, okay.  I've gotcha, I've gotcha.

Hooper:  But there is no dispute about the three-percent rating.

Later in the hearing, the Court questioned the parties about discovery needed before the compensation hearing:[3]

Court:  Do we need to take any expert witness depositions?

Mr. Goodman:  No your honor.

Court: Mr. Hooper?

Mr. Hooper:  I don't think so.

The scheduling order identified permanent disability benefits and temporary disability benefits as disputed issues for trial.  Additionally, the pretrial statement contained no stipulation as to the impairment rating.

### Legal Principles and Analysis

At a compensation hearing, Ms. Demotte must establish by a preponderance of the evidence that she is entitled to workers' compensation benefits.  *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2017).  She has the burden of proof on all essential elements of her claim.  *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015).

---

[3] Attorney David Goodman appeared at the scheduling hearing in place of counsel of record, Zachary Wiley.

At the outset of the hearing, the parties stipulated to most of the essential elements of the claim. They agreed Ms. Demotte suffered a compensable injury, and UPS paid for all treatment to date. They also agreed Ms. Demotte is entitled to continuing medical benefits with Dr. Evans. In the end, the only disputed issues concerned Ms. Demotte's entitlement to permanent disability benefits and additional temporary disability benefits.

The dispute concerning permanent disability benefits centered on the admissibility of form C-30A as proof of Ms. Demotte's impairment rating. UPS objected to admissibility of the rating, and the Court sustained the objection. The Court provides the following analysis to address the admissibility of medical reports at a compensation hearing. To that end, the analysis focuses on three legal pronouncements: statutory law, regulatory law, and evidentiary rules.

<u>Admissibility of Medical Reports Under Statute</u>

Tennessee Code Annotated section 50-6-235(c)(1) allows for introduction of direct testimony "through a written medical report on a form established by the administrator." The administrator adopted form C-32 for this purpose. *See* Tenn. Comp. R. & Regs. 0800-02-01-.16(2). When completed by a physician, form C-32 satisfies the requirements for a signed medical report contained in section 50-6-235(c)(1). A party may introduce a form C-32, in lieu of deposition testimony, at any stage of litigation upon giving the opposing party at least twenty days' notice of its intent to rely on it. The opposing party may object to the report's introduction but must depose the physician within a "reasonable period of time," or the objection is waived. Tenn. Code Ann. § 50-6-235(c)(2).

Ms. Demotte attempted to introduce form C-30A instead of form C-32. While both are technically medical reports, the difference in the amount of information contained in form C-32 as opposed to form C-30A is overwhelming. Form C-32 is several pages in length and contains more detailed information concerning an employee's physical condition. It also includes a causation opinion and physician certification. Form C-30A, on the other hand, provides limited information and does not require certification. The Court finds that it is for this reason that the administrator provided form C-32 for admissibility in lieu of deposition testimony. Additionally, filing a C-32 signals an intention to rely on the report in lieu of deposition testimony, which triggers the opposing party's right to demand a deposition. Because Ms. Demotte failed to file form C-32, UPS' right to demand a deposition never arose.

While UPS had the right to object to the admissibility of form C-30A to prove Ms. Demotte's impairment rating, the Court found the objection puzzling. UPS voiced no objection to the three-percent impairment rating at the scheduling hearing. In fact, when the Court asked whether there was an agreement to the impairment rating, Mr. Hooper responded, "There is." Additionally, when the Court asked the parties whether they

needed to take expert witness depositions, Mr. Goodman said no, and Mr. Hooper said, "I don't think so."

At the compensation hearing, the parties stipulated to all material aspects of the case including compensability of the injury. With these stipulations and Mr. Hooper's previous statement of agreement to the impairment rating, the Court fails to see what would be accomplished if UPS chose to take Dr. Evans' deposition. Ms. Demotte, however, had the burden to prove her permanent impairment and needed to provide either expert witness testimony via a deposition transcript or through form C-32. Ms. Demotte attempted to rely on form C-30A instead, which is not admissible to prove permanent medical impairment under Tennessee Code Annotated section 50-6-235(c)(1). In short, Ms. Demotte had the duty to present her case through admissible evidence and failed to do so

## Medical Reports Under Regulatory Law

Ms. Demotte argued that despite the statutory law concerning admissibility of medical reports, the Court's rules and regulations allow for admissibility of the completed form C-30A as a medical record. She cited Tennessee Compilation Rules and Regulations 0800-02-21-.16(6)(B) in support of this argument. The rule provides in pertinent part: "All medical records signed by a physician, including via electronic signature, or accompanied by a certification that the records are true and accurate which has been signed by the medical provider shall be admissible." The Court disagrees with Ms. Demotte's position.

The Court sees a distinction between a medical record and a medical report for two reasons. First, the Bureau's rules and regulations identify forms C-30 and C-32 as medical reports. Second, physicians complete medical reports to support litigation in a workers' compensation claim, while physicians dictate or prepare medical records to track the course of treatment and determine appropriate next steps for care. In this Court's view, the distinction between a report prepared for litigation and medical records used to document and support treatment make the records more reliable. The Court, therefore, holds that a medical record as provided in Rule 0800-02-21-.16(6)(B) does not include form C-30A.

## Medical Reports Under the Rules of Evidence

UPS objected to admission of the impairment rating in form C-30A because it constitutes hearsay. The Tennessee Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay is not admissible except as provided for these rules or otherwise by law." *Id*. at 802.

The Court agrees that the impairment rating Dr. Evans provided on form C-30A constitutes hearsay. Dr. Evans completed the form outside of Court, so it qualifies as an out-of-court statement. Additionally, Ms. Demotte attempted to introduce the form to prove the three-percent rating contained within it. Accordingly, the form C-30A constitutes hearsay. Further, it does not fall within any of the exceptions to hearsay. *See id.* at 803. Thus the impairment rating in form C-30A is not admissible under the Rules of Evidence.

<u>Ms. Demotte Failed to Prove Entitlement to</u>
<u>Additional Temporary Disability Payments</u>

Ms. Demotte also seeks additional temporary total disability benefits. The Court denies her request.

UPS paid Ms. Demotte temporary disability benefits from the date of her injury until March 9, 2017. On March 9, Ms. Demotte saw Dr. Evans and asked him to release her to return to full-duty work. Dr. Evans agreed. For an unexplained reason, Dr. Kregor issued the release. Ms. Demotte then returned to work, and UPS terminated her temporary disability benefits.

Ms. Demotte worked for a few days and then left employment with UPS on March 21. She testified she could not physically perform her job. On April 10, Dr. Evans released her to return to work at full duty and noted that Ms. Demotte's work disability began on the date of injury and ended on April 10.

For the first twelve weeks she missed work, UPS overpaid temporary disability benefits to Ms. Demotte by $44.71 per week, or a total of $536.52 (($186.67 - $141.96) x 12 weeks). UPS then lowered the rate to $134.18 per week on February 8 and continued payments at that rate until her release to return to work—four weeks and two days later. This allowed UPS to recoup $33.34 (($141.96 - $134.18) x 4 weeks) + (($7.78/7) x 2 days)) of the overpayment, and left the overpayment balance at $503.18.

After Ms. Demotte left work on March 21, two weeks and six days passed before Dr. Evans placed her at maximum medical improvement and set her last date of disability at April 10. For that period, Ms. Demotte would have been due $405.60. Because this amount is less than the outstanding overpayment balance, Ms. Demotte cannot recover any additional temporary disability benefits.

**IT IS, THERFORE, ORDERED AS FOLLOWS:**

1. UPS shall continue to provide Ms. Demotte with ongoing future medical benefits, with Dr. Evans acting as the authorized treating physician.

2. Ms. Demotte's claim for permanent disability benefits and additional temporary disability benefits is denied.

3. Absent an appeal to the Appeals Board, this order shall become final in thirty days.

4. The Court taxes the $150.00 filing fee to UPS under Tennessee Compilation Rules and Regulations 0800-02-21-.07, for which execution may issue as necessary. UPS shall pay this fee within five business days of this ordering becoming final.

5. UPS shall file form SD-1 within ten business days of this order becoming final.

**ENTERED ON APRIL 11, 2018.**

_____
Joshua Davis Baker
Workers' Compensation Judge

## APPENDIX

**Exhibits:**

1. Medical Records
2. Choice of Physician Form

**Technical Record:**

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. UPS Compensation Hearing Brief
4. UPS Prehearing Statement
5. UPS Motion in Limine
6. UPS Exhibit List
7. Demotte Prehearing Statement
8. Demotte Witness and Exhibit List
9. Scheduling Order

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on April 11, 2018.

| Name | Certified Mail | First Class Mail | Via Email | Service sent to: |
|------|------|------|------|------|
| Zachary Wiley David Goodman | | | X | zwiley@forthepeople.com dgoodman@forthepeople.com |
| David Hooper | | | X | dhooper@hooperzinn.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov